**UNITED STATES of America,
Appellee,**

v.

**Edward Bernard PEEPLES, Appellant.**

**No. 113, Docket 30565.**

United States Court of Appeals
Second Circuit.

Argued Oct. 18, 1966.

Decided April 18, 1967.

Roger Goldburg, David M. Dorsen, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for appellee.

Robert Kasanof, New York City, for appellant.

Before WATERMAN, HAYS and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

Appellant, after a two day jury trial, was convicted of violating the Narcotic Drugs Import & Export Act, 21 U.S.C. § 173, § 174. On appeal he seeks a reversal of the conviction and a remand for a new trial.

The indictment contained two counts and appellant concedes that he made the two sales of narcotics set forth therein. The deliveries to the purchasing federal agents were made pursuant to the devious arrangements typically found in illicit narcotics transactions. The only unusual features of this case are first, the high quality of the heroin, the two ounces sold on June 30, 1964 having been pure heroin, and second, appellant's assertion at trial that he was able to deliver enormous quantities of narcotics.

Essential elements of the offense for which appellant was indicted are both that the narcotics he sold had been imported into the United States contrary to law and that appellant, when he sold the narcotics, knew it.[1] Appellant testified that he did not know where the heroin had been manufactured or whether it had been imported into the United States.[2] No other evidence relative thereto was presented by either side.

---

1. 21 U.S.C. § 174 provides as follows:

   Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five nor more than twenty years and, in addition, may be fined not more than $20,000. * * *

   Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

2. On the critical issue of the importation and his knowledge of the importation of the heroin, Mr. Peeples testified:

   Q. Mr. Peeples, as to the substance which you gave to Agent Coursey on two occasions, do you know where it was manufactured? A. No.

   Q. Do you know if it was imported into the United States? A. No.

   Q. Do you have any knowledge about it at all as to its origin? You got it from a man in the Bronx? A. Yes. He know who the man was. He sent me to him.

   Q. You got it from a man in the Bronx. You don't know where it was manufactured, do you? A. Of course not.

The only question raised on this appeal relates to the trial judge's charge and supplemental charges delineating to the jury the statutory inference that knowledge of the unlawful importation of the narcotics which the defendant-appellant sold is inferable from his possession of them.

Appellant contends that the trial judge erred in instructing the jury that it could draw the statutory inference unless the defendant satisfactorily explained that he had "lawful possession" of the narcotics. Appellant also maintains that the judge's charge precluded the jurors from determining whether they believed defendant's testimony that he did not know that the narcotics were illegally imported.

The trial judge initially instructed the jury that:

> * * * the second element with respect to each sale is that the government must satisfy you beyond a reasonable doubt that the defendant knew that the heroin which was the subject matter of this sale had been illegally imported.

> But now with regard to this second element, the importation, the law provides that if you find the defendant had possession of the heroin, then you may, but you are not required to, you may infer that the defendant knew that the heroin was imported contrary to law, unless on all of the evidence you can prove that the defendant had explained his possession of the heroin to you to your satisfaction, and this refers, ladies and gentlemen, to *lawful possession*, to your satisfaction.

> So here you will consider whether on all the evidence, including the defendant's testimony, the defendant has satisfactorily explained to you his possession of heroin and that he did know of the illegal importation. (Emphasis supplied.)

Defense counsel objected on the ground that this charge did not clearly indicate that a lack of knowledge as to unlawful importation was a sufficient defense to the indictment even if defendant's possession of the drugs was not lawful. This objection was overruled and the instructions the defense requested were refused.

The issues raised by the judge's charge evidently troubled the jury for, after some deliberation, it requested additional instructions. The court then, in a supplemental charge, repeated in substance its prior charge as to knowledge of unlawful importation and, once more, the defense objected. After further deliberation, the jury again returned for enlightenment as to what effect defendant's "knowledge-ability or lack of knowledge" of unlawful importation should have on their verdict. It also inquired about the percentage of heroin produced illegally in the United States versus the percentage produced outside. As there was no evidence in the record concerning areas of the world where heroin is produced, the judge declined to answer the latter inquiry, but did respond to the question as to the effect of "knowledgeability" as follows:

> *However, if after considering all the evidence you are not clear as to whether the defendant knew that the heroin was illegally imported, and you recall he testified he didn't, then you will consider whether the evidence shows that the defendant had possession of the heroin.*

> Now, you will recall the evidence on these two transactions. Possession means that he had the heroin, and you recall the transactions as testified to by the agent that he did obtain these packages and he delivered them to the agent.

> Now, if you believe that the defendant had possession of the heroin and if you find that the defendant did have possession of the heroin, you may infer from that possession that the defendant knew the heroin was illegally imported, unless the defendant has explained to your satisfaction how he happened to have possession of the heroin. And I think I mentioned to

you in my charge that *in considering whether he has explained it to your satisfaction you may consider whether you find he lawfully had the heroin or unlawfully had the heroin.*

Now, I say you may infer from his possession that he knew that the heroin was illegally imported, but you don't have to. That is up to you. And if you decide on all of the evidence that you are not going to make this inference from his possession, that he knew the heroin had been illegally imported, then of course, you may acquit the defendant. (Emphasis supplied.)

The defendant's objection to this second supplemental charge was also overruled. The jury again retired to deliberate, and, ten minutes later, returned a verdict of guilty on both counts of the indictment.

■ The federal narcotics statute here involved, 21 U.S.C. § 174, is based on the power of Congress to regulate interstate and foreign commerce. U. S. Const. Art. I, Sect. 8. Thus, as appears from the provision quoted in note 1, supra, the two facts of unlawful importation of the narcotics and of a possessor's knowledge thereof are two vital elements of the offense and must be proven in addition to the fact of a receipt, concealment, purchase or sale of the narcotics. Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); Chavez v. United States, 343 F.2d 85, 86 (9 Cir. 1965); Griego v. United States, 298 F.2d 845, 848 (10 Cir. 1962). The statutory presumption in Section 174 which permits a jury to infer from a defendant's unexplained possession of a narcotic that the narcotic had been unlawfully imported, and that the defendant knew it, is designed to obviate the difficulty of proving these two facts in each prosecution. See Sandler, "The Statutory Presumption In Federal Narcotics Prosecutions," 57 J. Crim.L., C. & P.S. 7, 8–9 (1966). This presumption has withstood constitutional attack because the proven fact of defendant's possession is circumstantial evidence rationally connected to the presumed facts. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Charley Toy v. United States, 266 F. 326 (2 Cir.), cert. denied, 254 U.S. 639, 41 S.Ct. 13, 65 L.Ed. 452 (1920); Copperthwaite v. United States, 37 F.2d 846 (6 Cir. 1930); Caudillo v. United States, 253 F.2d 513 (9 Cir.), cert. denied sub nom. Romero v. United States, 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1375 (1958). However, if the jury is instructed to consider proof of possession as conclusive proof of guilt rather than as merely proof from which to draw permissible inferences in order to find from that proven fact the two remaining essential facts that must be proven in order to establish the commission of the offense, the statute would be misconstrued into creating a new federal crime of possession which might be of dubious constitutionality. See Casey v. United States, 276 U.S. 413, 426, 48 S.Ct. 373, 72 L.Ed. 632 (1928). (Butler, J., dissenting); Griego v. United States, supra at 848, of 298 F.2d; United States v. Ah Hung, 243 F. 762, 764 (EDNY 1917); Brosman, The Statutory Presumption, 5 Tul.L.Rev. 178, 203 (1931); cf. United States v. Jin Fuey Moy, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916).

■ There was serious and prejudicial error in the instructions given by the court below. The initial charge, quoted supra, is deficient in its failure to advise the jury that, despite the operation of the statutory presumption, Peeples would not have violated the statute by his having had *unlawful* possession of the heroin if he had no knowledge of its unlawful importation. Within the meaning of Section 174, an accused need not show "lawful" possession to merit a "not guilty" verdict; if believed by the jury, evidence disclaiming his knowledge of unlawful importation is sufficient. Chavez v. United States, 343 F.2d 85, 89–90 (9 Cir. 1965); Griego v. United States, 298 F.2d 845, 848 (10 Cir. 1962); United States v. Turner, 65 F.2d 587, 588 (2 Cir. 1933); see also Harris v. United States, 359

U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959). To require that a defendant must establish that his possession of a narcotic is a lawful possession would authorize convictions to be obtained solely on proof of possession of contraband narcotics. Therefore, to the extent that there are cases in this circuit that may seem to have a different approach to this issue we distinguish them,[3] and cases from other circuits as well.[4] We reaffirm our holding in United States v. Llanes, 374 F.2d 712 (2 Cir. 1967), that the jury must determine whether a defendant who is in possession of narcotics has knowledge of their unlawful importation irrespective of whether his possession is lawful or unlawful; and we follow our holding in United States v. Turner, supra,[5] which antedated United States v. Moe Liss, 105 F.2d 144 (2 Cir. 1939) and United States v. Li Fat Tong, 152 F.2d 650 (2 Cir. 1945). In determining whether a defendant possessing narcotics had knowledge of their unlawful importation the jury *may*, of course, infer such knowledge from all the evidence before it including the fact of the possession. But the jury must also be left free to believe, if it wishes to believe it, any evidence indicating a defendant's lack of knowledge regardless of whether his possession was lawful; jurors should be instructed to acquit a defendant if satisfied that the defendant did not know the narcotic was imported. This interpretation of the statute will not result in a seady stream of acquittals in prosecutions based upon 21 U.S.C. §§ 173, 174, see Chavez v. United States, supra at 90–91 of 343 F.2d, because the evidence offered to prove a defendant's ignorance of unlawful importation must be believable under all the circumstances. See, e. g., United States v. Gibson, 310 F.2d 79 (2 Cir. 1962); United States v. Norton, 310 F.2d 718 (2 Cir. 1962); Landsborough v. United States, 168 F.2d 486 (6 Cir.), cert. denied, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948), affirming convictions which have been obtained where the accused has denied any knowledge of unlawful importation. Moreover, of course, the defendant may not immunize himself from conviction by deliberately remaining ignorant of the source of the narcotics with which he deals. An accused's "willful ignorance" of the source of the drugs despite the proximity of the accused to that source, as shown by his capacity to provide quantities of narcotics at will, his capacity to set the essential terms of a narcotics transaction, or to obtain custody over the proceeds therefrom, tends to prove the accused's knowledge of unlawful importation, see Griego v. United States, supra, 298 F.2d at 849,

3. See United States v. Moe Liss, 105 F.2d 144, 146 (2 Cir. 1939); United States v. Li Fat Tong, 152 F.2d 650, 652 (2 Cir. 1945). In United States v. Moe Liss this court properly observed that lack of knowledge was a valid defense to a prosecution based on Section 174, yet proceeded to uphold a charge requiring a showing of "possession lawful under the statute." 105 F.2d at 146. While such language, "lawful possession," could, by a strained interpretation, include possession accompanied by ignorance of unlawful importation, such an interpretation was apparently rejected in United States v. Li Fat Tong, supra.

4. See United States v. Kapsalis, 313 F.2d 875, 877–878 (7 Cir.), cert. denied sub nom. Robinson v. United States, 374 U.S. 856, 83 S.Ct. 1911, 10 L.Ed.2d 1077 (1963); United States v. Feinberg, 123

F.2d 425, 427 (7 Cir. 1941), cert. denied, 315 U.S. 801, 62 S.Ct. 626, 86 L.Ed. 1201 (1942).

5. The *Liss* opinion sought in vain to distinguish United States v. Turner on the ground that the charge therein had withdrawn from jury consideration the defendant's explanation, 105 F.2d at 146. However, the same error held reversible in *Turner* must have occurred in *Liss* for, in both cases, the explanations of the accused denying knowledge of unlawful importation were nullified by instructions that "lawful" possession must be shown. As neither defendant had attempted to show lawful possession, the failure to submit to the jury a proper question for its determination, that of the defendant's guilty knowledge, was as evident in *Liss* as in *Turner*.

Sandler, supra at 10; and in appropriate cases, the jury should be so instructed.

■ We also find error in the second supplemental charge, quoted supra, in which the court instructed the jury, in effect, that if the jury were uncertain as to Peeples's knowledge of unlawful importation it should consider whether "the defendant had possession of the heroin." In view of the jurors' obvious confusion as to "knowledgeability" this charge may have been interpreted by them as a direction to find Peeples guilty solely because he possessed the narcotics, even if they believed his denial of knowledge of unlawful importation.

■ Furthermore, this charge, which left the jurors with the impression that they should infer that the defendant had knowledge of unlawful importation from the fact of his possession improperly destroyed the Government's burden of proving defendant guilty beyond a reasonable doubt by requiring the defendant to assume the burden of persuasion on the issue of guilty knowledge. See Na Choy Fong v. United States, 245 F. 305, 307 (9 Cir. 1917), cert. denied, 245 U.S. 669, 38 S.Ct. 190, 62 L.Ed. 539 (1918). The defendant need not persuade the jury of his lack of knowledge, Williams, Burdens and Presumptions in Criminal Law, 212 L.T. 211, 212–13 (1951); to the contrary, the prosecution retains the burden of establishing all the elements of the crime beyond a reasonable doubt, including knowledge, see 111 U.Pa.L.Rev. 903, 904 (1962). If the explanation of the accused, or evidence of other circumstances creates a reasonable doubt in the minds of the jury as to defendant's knowledge of importation, the jury must acquit, regardless of defendant's possession, and should have been so instructed.

Reversed and remanded for a new trial.

HAYS, Circuit Judge, concurs in the result.